**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CESAR RIVAS, *et al.*,

*Plaintiffs*,

v.

UNITED AMERICAN SECURITY, LLC, *et al.*,

*Defendants*.

Civil Action No. 23-3748 (SLS)
Judge Sparkle L. Sooknanan

**MEMORANDUM OPINION**

Almost three years ago, Cesar Rivas and Enyis Velasquez sued their employer, GardaWorld, a security firm that provides services throughout the District of Columbia. The Plaintiffs alleged that GardaWorld assigned them to security officer positions without paying them the mandatory security officer minimum wage under federal and District of Columbia law. After years of contentious litigation, including extensive discovery disputes and summary judgment motion practice, the Parties reached a settlement, with the Plaintiffs agreeing to release their claims in exchange for $50,000. But they could not reach an agreement with respect to attorney fees and costs. So the Plaintiffs now return to the Court seeking $638,440.00 in attorney fees and $9,988.36 in costs. The Court has carefully reviewed the Parties' submissions and finds that the Plaintiffs' requests are largely reasonable. The Court awards the Plaintiffs $542,674.00 in fees and $9,988.36 in costs, for a total award of $552,662.36.

**BACKGROUND**

In December 2023, Cesar Rivas sued his employer, GardaWorld, a security firm operating in Washington, D.C. Compl., ECF No. 1. In February 2024, Mr. Rivas filed an Amended

Complaint adding Enyis Velasquez as a second Plaintiff. Am. Compl., ECF No. 12. In December 2024, the Plaintiffs added JLL, a property management company, as a Defendant. *See* Second Am. Compl., ECF No. 29. That operative complaint asserted claims under the Fair Labor Standards Act (FLSA), the District of Columbia Minimum Wage Act (DCMWA), and the District of Columbia Wage Payment and Collection Law (DCWPCL). *Id.* It also included claims for unjust enrichment and breach of contract. *Id.* The Plaintiffs sought damages for the underpayment of wages, overtime, and benefits. *See* Second Am. Compl. ¶¶ 97–130.

The road to resolving this case was contentious and difficult. The Parties engaged in extensive discovery overseen by Magistrate Judge Moxila A. Upadhyaya. The Defendants' counsel marred the discovery process with "gamesmanship," leading Judge Upadhyaya to consider "issuing a show cause order as to why defendant's counsel should not be sanctioned . . . for the lack of candor to the Court[.]" Sept. 25, 2024, Hr'g Tr. at 10:18, 19:8–11, ECF No. 53; *see also* Apr. 3, 2025, Hr'g Tr. at 6:2–5, ECF No. 52 (stating from the Court's perspective that "[t]his case has had a lot of issues on the defendant's part about wasting the Court's time" and that the Court "had some real problems in discovery about some of the way that this case has been conducted"). After failed efforts at mediation, the Defendants moved for summary judgment. Defs.' Mot. Summ. J., ECF No. 43. In the alternative, the Defendants requested that the Court stay proceedings pending a class certification ruling in a similar case, *Chang v. United Am. Sec., LLC*, No. 24-cv-2377 (D.D.C.). *Id.* The Parties then engaged in additional contested supplemental briefing. *See* Defs.' Reply at 21, ECF No. 46 (withdrawing request for a stay); Pls.' Surreply, ECF No. 50 (addressing the import of a recent similar case); Defs.' Sur-Surreply, ECF No. 51 (same); Joint Status Report, ECF No. 55 (reinstating request for a stay).

Earlier this year, this Court resolved the Defendants' motion, largely siding with the Plaintiffs. Mem. Op., ECF No. 63. The Court found that "summary judgment [was] inappropriate as to most of the Plaintiffs' claims and a stay [was] not warranted." *Id.* at 8. Importantly, the Court held that "a reasonable jury could conclude that the duties assigned to Mr. Rivas and Ms. Velasquez qualify them as security officers under the DCMWA." *Id.* at 15. The Court also dismissed many of the Defendants' arguments as meritless, such as their claim that the Plaintiffs did not work "in an office building[.]" *Id.* But the Court did find for the Defendants on some narrower points, including (1) that Ms. Velasquez could not bring "claims predicated on work performed before she obtained her security officer certification in November 2024," *id.* at 13, and (2) that JLL's liability as a joint employer was "significantly limited," *id.* at 24. After the Court's summary judgment ruling, the Plaintiffs dismissed JLL from this action. *See* ECF No. 66.

The Court proceeded to set a trial date to resolve the Plaintiffs' claims. *See* Pretrial Order, ECF No. 68. But prior to trial, the Plaintiffs and GardaWorld resolved the case through a settlement under which GardaWorld agreed to pay the Plaintiffs $50,000 in exchange for the release of their wage-and-hour claims under the FLSA, the DCMWA, and the DCWPCL. Settlement Agreement ¶¶ 2–3, Pls.' Ex. 1, ECF No. 71-2. GardaWorld conceded the Plaintiffs' entitlement to attorney fees under D.C. Code § 32-1308(b)(1), *id.* ¶ 5, but the settlement reserved the question of attorney fees to be "decided or negotiated separately," with this Court retaining jurisdiction. *Id.* ¶ 2(d). From that point, the Plaintiffs repeatedly proposed mediation to resolve the sole outstanding question of attorney fees and costs. *See* Emails Regarding Fee Mediation, Pls.' Ex. 7, ECF No. 71-8. But GardaWorld's counsel barely engaged with these proposals, insisting on a global settlement of other litigation. *Id.* The Plaintiffs then moved for fees and costs. *See* Pls.' Mot. for Att'y Fees (Pls.' Mot.), ECF No. 71. That motion is now fully briefed and ripe for review. *See*

Def.'s Opp'n to Pls.' Mot. for Att'y Fees (Def.'s Opp'n), ECF No. 73; Pls.' Reply, ECF No. 74; Pls.' Suppl. Mem., ECF No. 75.

**LEGAL STANDARD**

"The FLSA, the DCMWA, and the DCWPCL all require that a prevailing plaintiff receive an attorneys' fee award." *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 46 (D.D.C. 2017); *see* 29 U.S.C. § 216(b); D.C. Code § 32-1308(b)(1). "A party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025).

Generally, attorney fees are calculated by "multiply[ing] the number of hours reasonably expended in litigation by a reasonable hourly rate or lodestar." *DL v. District of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019) (cleaned up). Under this lodestar method, courts will "(1) determine the number of hours reasonably expended in litigation; (2) set the reasonable hourly rate; and (3) use multipliers as warranted." *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015) (cleaned up). "For purposes of the [lodestar] method calculation, the party seeking reimbursement bears the burden of showing that both the hours expended and the rate requested are reasonable." *Seo v. Oh*, No. 18-cv-785, 2024 WL 4381191, at *1 (D.D.C. Oct. 3, 2024). "Once an applicant meets this burden, a presumption applies that the product of the number of hours billed and the hourly rates" is reasonable. *Munoz v. Telligent Masonry LLC*, No. 21-cv-2789, 2023 WL 6389129, at *4 (D.D.C. Oct. 2, 2023). At that point, the opposing party bears the burden to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982).

For DCMWA and DCWPCL claims, the appropriate rates are set by statute. A prevailing employee is entitled to "attorney's fees computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current

market hourly rates for attorney's services." D.C. Code § 32-1308(b)(1). As a result, courts in this District apply the LSI *Laffey* Matrix rates to DCMWA cases. *See Herrera*, 257 F. Supp. 3d at 46 (explaining that "the statute's plain language requires use of the LSI *Laffey* matrix to determine the applicable rate"). In addition, recoverable costs under the statute include "expert witness fees, depositions fees, witness fees, juror fees, filing fees, certification fees, the costs of collecting and presenting evidence, and any other costs incurred in connection with obtaining, preserving, or enforcing the judgment[.]" D.C. Code § 32-1308(b)(3).

## DISCUSSION

The Plaintiffs request $638,440.00 in attorney fees and $9,988.36 in costs and expenses. See Pls.' Mot. at 1 (seeking $543,638.40 in fees and $9,988.36 in costs); Pls.' Reply at 16 (adding $47,383.50 in fees incurred since filing of fee motion); Pls.' Suppl. Mem. at 1–3 (increasing the request to reflect the updated matrix rates issued after the motion). GardaWorld does not dispute that the Plaintiffs are entitled to attorney fees and costs. *See* Def.'s Opp'n at 1; Settlement Agreement ¶ 2(d). Rather, they request an across-the-board 70% reduction in fees and costs—a number that they seemingly plucked out of thin air. *See* Def.'s Opp'n at 1–2. Given the length and complexity of this case, the Court disagrees that such a steep reduction is appropriate. However, the Court partially reduces the requested fees to reflect the Plaintiffs' limited success at summary judgment. It awards $542,674.00 in fees and $9,988.36 in costs, for a total award of $552,662.36.

### A. Attorney Fees

#### 1. Reasonableness

The Court must first determine whether the Plaintiffs have justified their billing rates and number of hours.

Starting with billing rates, the Plaintiffs correctly used the LSI *Laffey* Matrix, as required for DCMWA and DCWPCL claims.[1] *See* D.C. Code § 32–1308(b)(1); *Herrera*, 257 F. Supp. 3d at 46. "The *Laffey* Matrix sets out a general guideline for awarding attorneys' fees based on experience[,]" with hourly rates set based on the number of years since an attorney graduated law school. *Salazar ex rel. Salazar*, 809 F.3d at 62. The LSI *Laffey* Matrix is one variant of the *Laffey* Matrix used to adjust for inflation each year; it is based on the Legal Services Index of the Nationwide Consumer Price Index of the Bureau of Labor Statistics. *See Seo*, 2024 WL 4381191, at *2. GardaWorld does not contest that the LSI *Laffey* Matrix supplies the correct rates in this case.

The Court applies the 2026–2027 rates from the LSI *Laffey* Matrix, which are "the rates in effect at the time" of the Court's "determination." D.C. Code § 32-1308(b)(1). The Plaintiffs' attorneys, Justin Zelikovitz and Jonathan Tucker, graduated law school in 2008 and 2009, respectively. *See* Decl. of Justin Zelikovitz (Zelikovitz Decl.) ¶ 7, ECF No. 71-1. The Plaintiffs therefore requested $1,100 per hour consistent with the 2026–2027 LSI *Laffey* Matrix rate for attorneys with 11–19 years' experience at the time of filing. Pls.' Suppl. Mem. at 2; *see also* Updated Salazar Matrix, Pls.' Ex. 9, ECF No. 75-1. In addition, the Plaintiffs requested $299 per hour for their counsel's legal assistants and paralegals, consistent with the same updated matrix. *Id.*

Turning next to the number of hours billed, the Plaintiffs originally sought attorney fees for 614 hours, covering work starting with client intake through the filing of the fee petition. *See*

[1] Because both this Court's summary judgment opinion and the subsequent settlement agreement analyzed the FLSA claims alongside the DCMWA and DCWPCL claims, *see* Mem. Op. at 9; Settlement Agreement ¶ 3, the Court "need not separately address the appropriate rate in FLSA cases," *Seo*, 2024 WL 4381191, at *2; *see also Munoz*, 2023 WL 6389129, at *5 (applying the LSI *Laffey* rates to FLSA claims).

Pls.' Mot. at 18; Zelikovitz Decl. ¶ 11; Billing Records, Pls.' Ex. 2, ECF No. 71-3. Mr. Zelikovitz billed 175.6 hours, Mr. Tucker billed 328.4 hours, and their paralegals and legal assistants billed 110 hours. Zelikovitz Decl. ¶ 11. Mr. Zelokovitz and Mr. Tucker then billed an additional 46.5 hours to draft and file the reply in support of the Plaintiffs' fee petition, bringing the total hours to 660.5.[2] Pls.' Reply at 16; Supplemental Time Entries, Pls.' Ex. B, ECF No. 74-2. Applying these hours to the applicable rates, the Plaintiffs calculated a lodestar of $638,440.00, which forms the basis for their fee request. Pls.' Suppl. Mem. at 2–3.

The Court finds that the number of hours expended was reasonable. A fee request "must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. "In reviewing time entries, courts typically look at the total hours to determine whether they are excessive, and at individual entries to determine whether there are duplicate or unreasonable entries." *Seo*, 2024 WL 4381191, at *3. Here, the Plaintiffs' counsel submitted detailed, contemporaneous, task-by-task billing records to justify their fee request. *See* Zelikovitz Decl. ¶ 6; Billing Records; Supplemental Time Entries. Counsel also explained that they "exercised billing judgment by writing off or reducing time that was excessive, duplicative, or otherwise unnecessary, and by excluding time that was not reasonably expended on the litigation." Zelikovitz Decl. ¶ 6. Upon an independent review of their billing records, the Court agrees. Among other tasks, counsel "conducted written discovery; reviewed the documents GardaWorld produced across its productions; took and defended six depositions in the District of Columbia and Pennsylvania; briefed a contested motion for leave to amend; participated in a full-day mediation

[2] The Plaintiffs did not request fees for the time spent preparing the supplementary motion informing the Court of the updated LSI *Laffey* Matrix rates. *See* Pls.' Suppl. Mot. at 1.

in April 2025; fully briefed GardaWorld's motion for summary judgment, . . . and prepared the case for trial before it resolved." Zelikovitz Decl. ¶ 12. Given the extensive work required to litigate this case over nearly three years, the Court is satisfied that the Plaintiffs have justified the number of hours billed through individual entries. The supplemental time entries reflecting counsel's work on the reply brief in support of the fee petition are similarly sufficient. *See Wilkett v. ICC.*, 844 F.2d 867, 878 (D.C. Cir. 1988) (awarding fees incurred in preparing a reply in support of a fee petition); *Campbell v. District of Columbia*, 202 F. Supp. 3d 121, 126 n.2 (D.D.C. 2016) (same).

In sum, the Plaintiffs have justified both their proposed hourly rate and the total number of hours billed. So their $638,440.00 lodestar is presumptively reasonable.

**2. Reductions**

"If a plaintiff requesting attorneys' fees makes a reasonable showing of the hours expended in litigation, it is defendants' obligation to identify specific time entries that should not be compensated." *Munoz*, 2023 WL 6389129, at *6. Here, GardaWorld does not challenge any individual entries, instead arguing that the overall fee request is unreasonable and excessive.[3] In this scenario, the Court must determine whether an adjustment to the lodestar amount is warranted. *Id.* at *6–7 (approaching the inquiry in a similar way); *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1328 (explaining that courts may apply multipliers or adjustments to ensure the reasonableness of the award after the lodestar is calculated). "There is a strong presumption that the lodestar figure represents a reasonable attorney's fee, because the lodestar figure includes most,

---

[3] GardaWorld raises issues with some individual entries, but only as "examples" that it says are "illustrative" of a broader pattern. Def.'s Opp'n at 11. In addition, it requests a 70% across-the-board reduction in fees and costs, rather than the elimination of specific billing entries. Therefore, the Court construes GardaWorld's opposition as requesting a comprehensive reduction, rather than the elimination of individual billing entries.

if not all, of the relevant factors constituting a reasonable attorney's fee[.]" *Heller v. D.C.*, 832 F. Supp. 2d 32, 37 (D.D.C. 2011) (quotation marks omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)). Thus, "any party requesting an adjustment to the lodestar figure bears the burden of justifying such an adjustment."[4] *Seo*, 2024 WL 4381191, at *4.

GardaWorld argues that the lodestar should be adjusted downward by 70% because (1) the Plaintiffs achieved limited success, (2) counsel's research overlapped with other cases, (3) counsel practiced duplicative billing, and (4) the lodestar figure raises due process concerns. For the most part, the Court disagrees with these arguments. But it applies a small downward adjustment to account for the Plaintiffs' limited success at summary judgment.

*First*, GardaWorld urges the Court to reduce the lodestar figure because the Plaintiffs only partially succeeded at summary judgment. Opp'n at 5–6. The Supreme Court has explained that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). This may be the case "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* In this context, "the most critical factor is the degree of success obtained." *Id.* The analysis is a "holistic" one that "consider[s] the extent of energy expended by counsel on a particular claim, as well as the level of interrelatedness of the plaintiff's claims[.]" *Miller v. District of Columbia*, No. 13-cv-1854, 2014 WL 11459905,

[4] The Plaintiffs imply that the burden to show a reduction is even steeper under the DCMWA. They quote a provision of the law that states: "[n]o reduction shall be made from this rate, or from the hours actually expended, except upon clear and convincing evidence that the reduction will serve the remedial purposes of this law." Pls.' Mot. at 19 (citing D.C. Code § 32-1308(b)(2)). However, the only federal court to expressly consider this provision has indicated that it "applies only when 'the fees remain unpaid to the attorney at the time of any subsequent review, supplementation, or reconsideration of the fee award,' not upon consideration of the initial fee motion." *Seo*, 2024 WL 4381191, at *3 n.2 (D.D.C. Oct. 3, 2024) (quoting D.C. Code § 32-1308(b)(2)). Even if it applies, the Court finds that a small downward adjustment is warranted.

at *7 (D.D.C. June 30, 2014) (cleaned up). A district court "necessarily has discretion" in making this decision—it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.

At summary judgment, this Court held (1) that Ms. Velasquez was not entitled to the security officer minimum wage before obtaining her security officer license, *see* Mem. Op. at 12, and (2) that JLL's potential liability as a joint employer was limited to only eleven shifts at a single building, *id.* at 27.[5] The Court agrees that a downward adjustment is warranted. Although the Plaintiffs achieved a significant degree of success in this case, they did not completely prevail. The Court's summary judgment decision eliminated Ms. Velasquez's ability to seek damages for multiple years and thousands of dollars in unpaid wages. And the Plaintiffs voluntarily dismissed JLL after the Court largely rejected their theories regarding that Defendant.[6] *See* Stipulation of Dismissal, ECF No. 66. This limited success at summary judgment necessarily hampered the Plaintiffs' ability to reach a larger settlement, mitigating their overall success.

It is difficult to isolate counsel's time on these two issues on a claim-by-claim basis. And GardaWorld makes no attempt to aid the Court in that determination. As the Plaintiffs point out, Ms. Velasquez and Mr. Rivas had largely overlapping claims, and evidence gathered in support of the claims against JLL overlapped with evidence necessary to prove the claims against GardaWorld. *See* Pls.' Reply at 14–16. In such a situation, "if successful and unsuccessful claims share a common core of facts or are based on related legal theories, then a court should simply

---

[5] The Court also held in the Defendants' favor on issues involving the fringe benefit cap, *see* Mem. Op. at 18–19, and the breach of contract claim, *see id.* at 22–24. However, GardaWorld does not seek a reduction in fees for these ancillary issues.

[6] The Plaintiffs claim that they only "offered the dismissal [of JLL] as a gesture of magnanimity to open the door for settlement — not because the theory had failed." Pls.' Reply at 14. But even so, this Court's decision sharply curtailed their claims against JLL.

compute the appropriate fee as a function of degree of success." *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1537 (D.C. Cir. 1992) (citing *Hensley*, 461 U.S. at 434–35). With all this in mind, the Court finds that a 15% reduction in fees is appropriate to account for the time devoted to the Plaintiffs' failed claims. This reduction ensures that the Plaintiffs' fee award is not excessive in light of their partial success.

*Second*, GardaWorld argues that much of the time spent on research was unnecessary because the Plaintiffs' counsel brought 18 separate cases against the security firm involving similar allegations. Def.'s Opp'n at 6–7. Again, GardaWorld does not identify specific time entries in support of its argument. But in any event, the Court disagrees. For starters, GardaWorld makes no attempt to back up its claim that counsel expended unnecessary time on research. In fact, the Plaintiffs point out that of the 18 similar cases, this was "only the third case filed" and "the second to be litigated." Pls.' Reply at 9. GardaWorld thus lacks any evidence that the issues here appeared "subsequent" to other cases such that the attorneys were "billing the identical research at full freight[.]" Def.'s Opp'n at 6. Moreover, while the other cases may be similar, GardaWorld does not claim that they are identical. Different cases involving different plaintiffs necessarily require different fact gathering, research, and other work. And GardaWorld itself injected unique issues—such as its bizarre claim of one-way intervention—to which the Plaintiffs were forced to respond. On this record, GardaWorld does not meet its burden of showing that an adjustment is warranted for unnecessary work.

*Third*, GardaWorld argues that the "Plaintiffs' records reflect a consistent pattern of duplicative staffing" because Mr. Zelikovitz and Mr. Tucker billed overlapping time to attend the same meetings and hearings. Def.'s Opp'n at 9. This argument—which relies primarily on decades-old, out-of-circuit case law—is wrong. "The use of multiple attorneys is not unreasonable

*per se*. For example, multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or the law." *Wright v. Barry*, No. 84-cv-1777, 1985 WL 3540, at *8 n.7 (D.D.C. Oct. 8, 1985); *see also Salazar v. D.C.*, 30 F. Supp. 3d 47, 59 (D.D.C. 2014), *aff'd sub nom. Salazar ex rel. Salazar*, 809 F.3d 58 (explaining that "it is not unreasonable for Plaintiffs to bring the two attorneys[] who are most well-versed in this case" to a status conference). Here, the Plaintiffs explain that their counsel's practice is staffed by only two lawyers, with "no cadre of junior associates to whom research, drafting, or cite-checking can be delegated." Pls.' Reply at 11. Therefore, it was reasonable for these two attorneys to attend the same important hearings (such as the January 29, 2026, hearing on the motion for summary judgment and motion to stay) or a critical mediation (such as the all-day mediation on April 29, 2025). It was also reasonable for these two attorneys to attend meet-and-confer sessions with opposing counsel and to confer internally to discuss important steps in the litigation. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337 (explaining that it is "well within the District Court's discretion" to award attorney fees for time spent "conferring with colleagues . . . to ensure that a case is managed in an effective as well as efficient manner"). Tellingly, although GardaWorld criticizes the Plaintiffs for duplicative staffing, GardaWorld itself often appeared with more than two attorneys. *See, e.g.*, Tr. of Status Conference, ECF No. 59, 2:6–22 (three attorneys for the Defendant present at a status conference compared to two for the Plaintiff); Deposition of Cesar Rivas at 3, Ex. I to Defs.' Mot. for Summ. J., ECF No. 43-1 (two attorneys for the Defendant present at a deposition compared to one for the Plaintiff). So GardaWorld has not shown that the Plaintiffs' attorneys exercised unreasonable billing judgment by both attending important litigation events.

*Fourth*, GardaWorld argues that imposing hundreds of thousands of dollars in fees and costs atop a $50,000 settlement raises due process concerns, such that the fees must be reduced by

70%. Def.'s Opp'n at 11, 18. Again, the Court disagrees. First and foremost, proportionality between fees and damages is not a basis for a reduction in fees. *See Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 114 (D.D.C. 2014) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery."); *Seo*, 2024 WL 4381191, at *4 (explaining that courts in this District "frequently award[] reasonable attorneys' fees in excess of the unpaid wages awarded in FLSA and DCMWA cases" and collecting similar cases). GardaWorld counters that disproportionality may be constitutionally significant because it transforms the fee award from compensation to a penalty. *See* Def.'s Opp'n at 15–16. But their authorities—such as *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)—are not particularly relevant because they arise in the punitive award context. While punitive damages are designed for "punishing unlawful conduct and deterring its repetition," *Gore*, 517 U.S. at 568, attorney fees are compensatory, *see Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) ("The fundamental purpose of the fee award is to compensate the attorney for his efforts."). Here, the fee award is an entirely foreseeable consequence of GardaWorld's litigation strategy. GardaWorld is not being "punished for preserving and litigating unresolved legal issues[.]" Def.'s Opp'n at 17. Rather, the Plaintiffs are being compensated for prevailing on those issues.[7]

Even assuming that the fee award in this case raises due process concerns, those concerns are abated by abundant fair notice. There are three reasons why. First, the DCMWA itself provided notice to GardaWorld. The statute explicitly provides that attorney fees "shall" be awarded to a prevailing employee through the lodestar methodology and the LSI *Laffey* Matrix, D.C. Code

[7] GardaWorld also repeats its argument that, aside from raising constitutional concerns, the Court should consider proportionality when weighing a reduction in fees based on partial success. *See* Def.'s Opp'n at 14–15. The Court already addressed this argument above.

§ 32-1308(b)(1); *see also Herrera*, 257 F. Supp. 3d at 46, which "produces reasonably predictable results[,]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010). Second, in November 2024, the Plaintiffs expressly informed GardaWorld about potential fees. *See* Letter Regarding Attorney Fees, Pls.' Ex. 6, ECF No. 71-7. They explained that attorney fees often far exceed damages in these types of cases, stated that fees could "almost certainly eclipse the underlying amount in dispute" in this case, and expressed an openness to settlement. *Id.* Third, as the Plaintiffs point out, in a similar case involving a different plaintiff, GardaWorld itself projected a high fee exposure to reach the amount-in-controversy threshold in federal court. *See Rivas v. United Am. Sec., LLC*, No. 25-cv-839, 2025 WL 2834680, at *4 (D.D.C. Sept. 29, 2025). As that court explained, "GardaWorld is counting on the attorneys' fees to be awarded to [the plaintiff] amounting to nearly 450% of the potential award obtained by [the plaintiff] should he prevail." *Id.* In fact, GardaWorld used evidence from *this* case to show that it could estimate large fees in *that* case based on "objective data and math." *J. Rivas* Briefing at 8–9, Pls.' Ex. A, ECF 74-1. So the Court questions how GardaWorld can now claim with a straight face that it "had no meaningful way to predict" its fee exposure. Def.'s Opp'n at 14.

Finally, GardaWorld had plenty of opportunities to mitigate its exposure to attorney fees. The Plaintiffs "extended no fewer than twenty settlement overtures over the course of the litigation, the majority of which GardaWorld ignored." Pls.' Reply at 4. Indeed, the Plaintiffs apparently made a $55,000 opening offer to GardaWorld for wages and damages in August 2024, which GardaWorld declined. Pls.' Reply at 3. And true to form, GardaWorld did not engage with the Plaintiffs' efforts to settle the attorney fees at issue here, either ignoring their messages or insisting on a global settlement. *See* Emails Regarding Mediation. To be sure, GardaWorld is entitled to

reject settlement offers and pursue litigation. But the consequence of that approach is that the prevailing attorneys are compensated for the resulting work.

**3. Total Fee Award**

In sum, applying the LSI *Laffey* Matrix, the Plaintiffs have justified their $638,440.00 lodestar. Applying a 15% reduction given the Plaintiffs' partial success, the Court will award $542,674.00 in attorney fees.

**B. Costs**

Turning to costs, the DCMWA, the FLSA, and the Parties' Settlement Agreement all permit the reimbursement of litigation costs. *See* D.C. Code § 32-1308(b)(1); 29 U.S.C. § 216(b); Settlement Agreement ¶¶ 5, 8. The DCMWA specifically mandates reimbursement for costs including, but not limited to, "depositions fees, witness fees, juror fees, filing fees, certification fees, the costs of collecting and presenting evidence, and any other costs incurred in connection with obtaining . . . the judgment." D.C. Code § 32-1308(b)(3). Here, the Plaintiffs seek $9,988.36 in costs for the filing fee, service fees, deposition and transcript costs, and other standard litigation expenses. *See* Billing Records at 8. GardaWorld appears to rest on its general argument that the Court should impose an across-the-board reduction of 70% without explaining why any costs were unreasonably incurred. *See* Def.'s Opp'n at 1. Because these costs are eminently reasonable and GardaWorld has identified no specific costs as problematic, the Court will award $9,988.36 in costs, as requested.

* * *

It is not lost on this Court that GardaWorld must pay many multiples of the settlement in this case in attorney fees and costs. But the magnitude of fees and costs incurred by the Plaintiffs is reasonable given the length and complicated history of this case. Throughout the years of

contentious litigation, judges in this District have found that GardaWorld's counsel engaged in "gamesmanship," ECF No. 53, Sept. 25, 2024, Hr'g Tr. at 10:18; took "disingenuous" litigating positions, Mem. Op. at 31 n.10; and took actions "to impugn the reputation of plaintiffs' counsel" based in part on a hearing before this Court, warranting sanctions, *Chang v. United Am. Sec., LLC*, No. 24-cv-2377, 2026 WL 1661436, at *14 (D.D.C. June 9, 2026). GardaWorld "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Copeland*, 641 F.2d at 891. The Court remains puzzled why GardaWorld chose to engage in years of litigation, contesting even straightforward issues, only to settle this case for $50,000, which is only $5,000 less than the Plaintiffs' opening offer in August 2024. But it should come as no surprise to GardaWorld that attorney fees and costs accumulated along the way.

## CONCLUSION

For the foregoing reasons, the Court grants the Plaintiffs' motion. The Court awards $542,674.00 in attorney fees and $9,988.36 in costs.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: October 19, 2026